■ In the Matter of ANTHONY M., Respondent, v JOSE SANCHEZ, Appellant. [645 NYS2d 23] —Order, Supreme Court, Bronx County (George Friedman, J.), entered on or about January 25, 1996, which granted reargument of an order directing that respondent patient be released from appellant's hospital and, upon reargument, adhered to the court's original determination, unanimously reversed, on the law and the facts, without costs, and the petition for a retention order granted.

Upon our independent review of the factual record in this nonjury proceeding, we conclude that appellant established by clear and convincing evidence that respondent patient not only suffers from a mental illness, but is in need of continued care and treatment and presents a substantial threat of harm to himself or to others (*see, Matter of Seltzer v Hogue*, 187 AD2d 230). We find that there is simply no fair interpretation of the evidence which favors release of the patient (*see, Matter of Boggs v New York City Health & Hosps. Corp.*, 132 AD2d 340, *appeal dismissed* 70 NY2d 972), given that the only professional or psychiatric testimony contained in the record preponderates overwhelmingly in favor of retention. Thus, the hearing court erred in not granting the petition to involuntarily retain the patient at the Bronx Psychiatric Center for an additional 60-day period.

At a hearing held pursuant to Mental Hygiene Law § 9.13,

the hospital presented testimony from Dr. Moran Park. Among other indicia relied on by Dr. Park in making his assessment that the patient should not yet be released was an incident which occurred on December 10, 1995 during which the patient stated that he would grab a metal tube and break somebody's head. The patient continued by threatening a nurse, who was carrying a needle, and screaming that he would take the needle and poke her eyes out. Dr. Park noted that the patient was easily agitated and would often scream at the top of his lungs that he would kill anyone attempting to keep him at the hospital. Finally, the patient hollered that several days after his release he was going to come back and "get his revenge."

Dr. Park continued by referring to an incident on December 11, 1995 during which the patient masturbated in front of a female staff member, an allegation which the patient denied. He also testified about similar behavior exhibited by the patient on December 12, 1995 when the patient again had a another violent outburst which included expletives and threats. As a result of these outbursts and other inappropriate behavior, the patient's passes for "home" visits were revoked and medication administered. The patient was transferred to a more secure ward for observation as a result of his violent behavior.

According to Dr. Park, the patient was not compliant when taking the medication to control his anxiety and impulsiveness, although he did comply with the requirements of taking his other medication. He further testified that the proposed aftercare plans to be instituted upon the patient's release were reliant upon an inappropriate caretaker who had health problems of his own. Finally, Park concluded that it was in the best interests of all if the patient were to remain hospitalized as the patient was dangerous to himself and others and should be retained for further treatment. Dr. Park stated that this was his conclusion, even though the patient had been doing well in the two days immediately prior to the hearing.

No psychiatric testimony was adduced on the patient's behalf that tends to support his release. Hesitant concessions on minor points during cross-examination of the hospital's expert witness cannot serve as a substitute for psychiatric testimony affirmatively controverting the medical findings calling for the patient's retention. Indeed, only Reverend Triplett, the patient's proposed caregiver, and the patient himself testified on the patient's behalf.

The sensitive determination to be made here requires us to weigh the patient's liberty interest against the State's interest

in providing care to its citizens who are unable to care for themselves because of emotional disorder, and in protecting the community *from the dangerous tendencies of some* individuals who are mentally ill (*see, Matter of Donaldson v Daley,* 206 AD2d 298, 299). While predicting future dangerousness is always an uncertain venture, the expert testimony adduced by the hospital, when viewed through the prism of this patient's past conviction for attempted rape and ongoing history of inappropriate behavior and violent outbursts while hospitalized, supports the conclusion that the patient presents a danger to others. That a patient's condition can be stabilized in a hospital setting does not necessarily lead to the conclusion that the patient can function on his own in an outpatient setting (*supra*). Here, we find that the facts call for the involuntary retention of the patient and, thus, the hospital's petition to do so for a 60-day period should have been granted. Concur—Sullivan, J. P., Milonas, Ross, Tom and Mazzarelli, JJ.